AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### Middle District of Louisiana

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No.  18-mj- |\
)
the Property Located at )
43420 Black Bayou Road )
Gonzales, Louisiana 70737 )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A - Property to be Searched

located in the _____ Middle _____ District of _____ Louisiana _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B - Property to be Seized

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2252<br>18 U.S.C. § 2252A | Criminal violations relating to the knowing production, transportation, shipment, receipt, possession, distribution, and production of child pornography. |

The application is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Marisa Cowdry, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  1/22/18

_____
*Judge's signature*

City and state:  Baton Rouge, Louisiana

Honorable Erin Wilder-Doomes, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

## DESCRIPTION OF LOCATION TO BE SEARCHED

The residence located at 43420 Black Bayou Road, Gonzales, Louisiana 70737, is

described as a one-story single-family dwelling with white sliding and a grey roof.  A small

travel trailer is on the property next to the carport that has been verified by the Ascension Parish

Sheriff's office as part of the property.





## ATTACHMENT B

## DESCRIPTION OF ITEMS TO BE SEIZED AND SEARCHED

The following materials, which constitute evidence of the commission of a criminal offense, contraband, the fruits of a crime, or property designed or intended for use or which is or has been used as the means of committing a criminal office, namely violations of 18 U.S.C. § 2252A.

1.    Any and all computer(s), computer hardware, computer software, electronic storage media (including without limitation any and all disk drives, CDs, DVDs, flash drives, cellular telephones, personal digital assistants (PDA), digital cameras and/or memory cards, or any other device capable of electronic storage of data and/or images), computer-related documentation, computer passwords and data-security devices, videotapes, video-recording devices, video-recording players, and video display monitors that are or may be used to: visually depict child pornography; display or access information pertaining to a sexual interest in child pornography; display or access information pertaining to sexual activity with children; or distribute, possess, or receive child pornography, or information pertaining to an interest in child pornography.

2.    Any and all computer software, including programs to run operating systems, applications, such as word processing, graphics, and communications programs, including, but not limited to, P2P software, that may be or are used to: visually depict child pornography, display or access information pertaining to a sexual interest in child pornography; display or access information pertaining to sexual activity with children; or distribute, possess or receive child pornography, or information pertaining to an interest in child pornography.

3.      Any and all notes, documents, records, or correspondence, in any format and medium (including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic messages, and handwritten notes) pertaining to the possession, receipt, or distribution of child pornography as defined in 18 U.S.C. § 2256(8) or to the possession, receipt, or distribution of visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2).

4.      In any format and medium, all originals, computer files, copies, and negatives of child pornography as defined in 18 U.S.C. § 2256(8), or visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2).

5.      Any and all diaries or address books containing names or lists of names and addresses of individuals who have been contacted by use of the computer(s) or by other means for the purpose of distributing or receiving child pornography as defined in 18 U.S.C. § 2256(8) or visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2).

6.      Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic messages, and handwritten notes), identifying persons transmitting, through interstate or foreign commerce by any means (including, but not limited to, the United States Mail or computer) any child pornography as defined in 18 U.S.C. § 2256(8) or any visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

7.      Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic messages, other digital data files and web cache information) concerning the receipt,

transmission, or possession of child pornography as defined in 18 U.S.C. § 2256(8) or visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

8.     Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic messages, and other digital data files) concerning communications between individuals about child pornography or the existence of sites on the Internet that contain child pornography or that cater to those with an interest in child pornography.

9.     Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic messages, and other digital-data files) concerning membership in online groups, clubs, or services that provide or make accessible child pornography to members.

10.     Any and all records, documents, invoices and materials, in any format or medium (including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic messages, and other digital data files) that concern any accounts with an internet service provider.

11.     Any and all records, documents, invoices and materials, in any format or medium (including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic messages, and other digital data files) that concern online storage or other remote computer storage, including, but not limited to, software used to access such online storage or remote computer storage, user logs or archived data that show a connection to such online storage or remote computer storage, and user logins and passwords for such online storage or remote computer storage.

12.     Any and all cameras, film, videotapes or other photographic equipment.

13.    Any and all address books, mailing lists, supplier lists, mailing address labels, and any and all documents and records, in any format or medium (including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic messages, and other digital data files), pertaining to the preparation, purchase, and acquisition of names or lists of names to be used in connection with the purchase, sale, trade, or transmission, through interstate or foreign commerce by any means (including the United States Mail or computer) any child pornography as defined in 18 U.S.C. § 2256(8) or any visual depiction of minors engaged in sexually explicit conduct,  as defined in 18 U.S.C. § 2256(2).

14.    Any and all diaries, notebooks, notes, and any other records reflecting personal contact and any other activities with minors visually depicted while engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

## UNITED STATES DISTRCIT COURT

## MIDDLE DISTRCIT OF LOUISIANA

IN THE MATTER OF THE APPLICATION   :
OF THE UNITED STATES OF AMERICA   :   MAGISTRATE NO. 18-mj-
FOR AN ORDER AUTHORIZING THE   :
SEARCH OF 43420 BLACK BAYOU ROAD, :   __UNDER SEAL__
GONZALES, LOUISIANA 70737   :

## AFFIDAVIT IN SUPPORT OF AN
## APPLICATION FOR SEARCH WARRANT

I, Marisa Cowdry, being duly sworn, depose and state the following:

### INTRODUCTION

1.    This affidavit is submitted in support of an application for a search warrant authorizing a search of the premises located at **43420 BLACK BAYOU ROAD, GONZALES, LOUISIANA 70737** (hereinafter referred to as "**SUBJECT PREMISES**"), more particularly described in **Attachment A**, incorporated herein by reference, which is located in the Middle District of Louisiana. The purpose of this application is to search and seize for evidence, more particularly described below and in **Attachment B**, incorporated herein by reference, as evidence, fruits and instrumentalities of criminal activity.

### AGENT BACKGROUND

2.    I am a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI") and have been so employed since January 2017. I am currently assigned to the New Orleans Division in the Baton Rouge Resident Agency. My duties include investigating a variety of criminal violations in the area of violent crimes. My duties are dedicated to investigating cases involving crimes against children, child exploitation, and child pornography. I have gained experience through training at the FBI Academy in Quantico, Virginia, and everyday work

relating to conducting these types of investigations.  I have received training in the area of child pornography and child exploitation, and have had the opportunity to observe and review numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media including computer media.  In the performance of my duties, I have investigated and assisted in the investigation of matters involving the possession, collection, production, receipt, and/or transportation of images of child pornography, in violation of 18 U.S.C. §§ 2252 and 2252A.  I have been involved in searches pertaining to the possession, collection, production, and/or transportation of child pornography through the execution of search warrants.  Moreover, I am a Federal law enforcement officer who is engaged in enforcing criminal laws, including 18 U.S.C §§ 2252 and 2252A, and I am authorized by the Attorney General to request a search warrant.

3.      I request authority to search the entire **SUBJECT PREMISES**, including the residential dwelling and any computer and computer media located therein where the items specified in Attachment B may be found, and to seize all items listed in Attachment B as instrumentalities, fruits, and evidence of crime.  Located within **SUBJECT PREMISES** to be searched, I seek to seize evidence, fruits, and instrumentalities of criminal violations relating to the knowing production, transportation, shipment, receipt, possession, distribution, and production of child pornography, in violation of 18 U.S.C. §§ 2252 and 2252A, as more particularly described in Attachment B.

4.      The statements contained in this affidavit are based in part on my training and experience, as well as on information provided to me by other law enforcement officers.  Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation.  Instead, I have set forth only the facts which I believe are necessary to establish probable cause to believe that

2

contraband, evidence fruits, and/or instrumentalities of violations of 18, U.S.C, §§ 2252 and

2252A are presently located at the **SUBJECT PREMISES**.

## STATUATORY AUTHORITY

4.    This investigation concerns alleged violations of 18 U.S.C. Sections 2252 and

2252A, related to material involving the sexual exploitation of minors.

a.    18 U.S.C. § 2252(a), in pertinent part, prohibits a person from knowingly

transporting, shipping, receiving, distributing, reproducing for distribution, possessing, or

accessing with intent to view, any visual depiction of minors engaging in sexually

explicit conduct using any means or facility of interstate or foreign commerce or in or

affecting interstate or foreign commerce, including by computer or mails.

b.    18 U.S.C. § 2252A(a) in pertinent part prohibits a person from knowingly

transporting, shipping, receiving, distributing, reproducing for distribution, possessing, or

accessing with intent to view any child pornography, as defined in 18 U.S.C. § 2256(8),

using any means or facility of interstate or foreign commerce or in or affecting interstate

or foreign commerce, including by computer.

c.    18 U.S.C. § 2252(a)(1) prohibits a person from knowingly transporting or

shipping, using any means or facility of interstate or foreign commerce, or in or affecting

interstate or foreign commerce, including by computer or mails, any visual depiction of

minors engaging in sexually explicit conduct.  Under 18 U.S.C. § 2252(a)(2), it is a

federal crime for any person to knowingly receive or distribute by any means, including

by computer, any visual depiction of minors engaging in sexually explicit conduct, using

any means or facility of interstate or foreign commerce, or that has been mailed or

shipped or transported in or affecting interstate or foreign commerce.  That section also

makes it a federal crime for any person to knowingly reproduce any visual depiction of minors engaging in sexually explicit conduct for distribution, using any means or facility of interstate or foreign commerce, or in or affecting interstate or foreign commerce, or through the mails. Under 18 U.S.C. § 2252(a)(4), it is also a crime for a person to knowingly possess or knowingly access with intent to view, one or more books, magazines, periodicals, films, or other materials which contain visual depictions of minors engaged in sexually explicit conduct that have been mailed, or has been shipped or transported using any means or facility of interstate or foreign commerce, or in and affecting interstate or foreign commerce, or which were produced using materials which have been mailed or so shipped or transported, by any means including by computer.

d.      18 U.S.C. § 2252A(a)(1) prohibits a person from knowingly mailing, transporting, or shipping, using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, any child pornography. 18 U.S.C. § 2252A(a)(2) prohibits a person from knowingly receiving or distributing any child pornography that has been mailed or shipped or transported, using any means or facility of interstate or foreign commerce, or in or affecting interstate or foreign commerce by any means, including by computer. 18 U.S.C. § 2252A(a)(3) prohibits a person from knowingly reproducing child pornography for distribution through the mails, or in or affecting interstate or foreign commerce by any means, including by computer. 18 U.S.C. § 2252A(a)(5)(B) prohibits a person from knowingly possessing or knowingly accessing with intent to view any book, magazine, periodical, film, videotape, computer disk, or other material that contains an image of child pornography that has been mailed, or shipped or transported using any means or

4

facility of interstate or foreign commerce, or in or affecting interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer.

## DEFINITIONS

5.     The following definitions apply to this Affidavit:

    a.     "Child erotica," as used herein, means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not, in and of themselves, obscene or that do not necessarily depict minors in sexually explicit poses or positions.

    b.     "Child pornography," as used herein, includes the definitions in 18 U.S.C. §§ 2256(8) and 2256(9) (any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct). See 18 U.S.C. §§ 2252 and 2256(2).

    c.     "Visual depictions" include, undeveloped film and videotape, data stored on computer disk or by electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image, that has been

transmitted by any means, whether or not stored in permanent format. See 18 U.S.C. § 2256(5).

　　　d.　　"Sexually explicit conduct" means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any persons. See 18 U.S.C. § 2256(2).

　　　e.　　"Computer," as used herein, is defined pursuant to 18 U.S.C. § 1030(e)(1), as "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device."

　　　f.　　"Computer hardware," as used herein, consists of all equipment which can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data. Computer hardware includes any data processing devices (including, but not limited to, central processing units, internal and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes, and other memory storage devices); peripheral input/output devices (including, but not limited to, keyboards, printers, video display monitors, and related communications devices such as cables and connections), as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including, but not limited to, physical keys and locks).

6

g.     "Computer software," as used herein, is digital information which can be interpreted by a computer, and any of its related components, to direct the way they work. Computer software is stored in electronic, magnetic, or other digital form.  It commonly includes programs to run operating systems, applications, and utilities.

h.     The terms "records," "documents," and "materials," as used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade form (including, but not limited to, writings, drawings, painting), photographic form (including, but not limited to, microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, photocopies), mechanical form (including, but not limited to, phonograph records, printing, typing) or electrical, electronic or magnetic form (including, but not limited to, tape recordings, cassettes, compact discs, electronic or magnetic storage devices such as floppy diskettes, hard disks, CD-ROMs, digital video disks (DVDs), personal digital assistants (PDAs), multimedia cards (MMCs), memory sticks, optical disks, printer buffers, smart cards, memory calculators, electronic dialers, or electronic notebooks, as well as digital data files and printouts or readouts from any magnetic, electrical or electronic storage device).

i.    "Computer passwords and data security devices," as used herein, consist of information or items designed to restrict access to or hide computer software, documentation, or data.  Data security devices may consist of hardware, software, or other programming code.  A password (a string of alpha numeric characters) usually operates a sort of digital key to "unlock" particular data security devices.  Data security hardware may include encryption devices, chips, and circuit boards.  Digitally coded data security software may include programming code that creates "test" keys or "hot" keys, which perform certain preset security functions when touched.  Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the progress to restore it.

j.    "Internet Protocol address" or "IP address" refers to a unique number used by a computer to access the Internet.  IP addresses can be dynamic, meaning that the Internet Service Provider (ISP) assigns a unique and different number to a computer every time it accesses the Internet.  IP addresses might also be static, if an ISP assigns a user's computer a particular IP address which is used each time the computer accesses the Internet.

k.    "Minor" means any person under the age of eighteen years. See 18 U.S.C. 2256(1).

l.    "Domain Name" refers to the common, easy to remember  names associated with an Internet Protocol address.  For example, a domain name of "www.usdoj.gov" refers to the Internet Protocol ("IP") address of 149.101.1.32.  Domain names are typically strings of alphanumeric characters, with each level delimited by a period. Each level, or top-level domains are typically ".com" for commercial

8

organizations, ".gov" for the governmental organizations, ".org" for organizations, and, ".edu" for educational organizations. Second level names will further identity the organization, for example "usdoj.gov" further identifies the United States governmental agency to be the Department of Justice. Additional levels may exist as needed until each machine is uniquely identifiable. For example, "www.usdoj.gov" identifies the World Wide Web server located at the United States Department of Justice, which is part of the United States government.

    m.    "Log Files" are records automatically produced by computer programs to document electronic events that occur on computers. Computer programs can records a wide range of events including remote access, file transfers, logon/logoff times, and system errors. Logs are often named based on the types of information they contain. For example, web logs contain specific information about when a website was accessed by remote computers; access logs list specific information about when a website was accessed from a remote location; and file transfer logs list detailed information concerning files that are remotely transferred.

    n. "Website" consists of textual pages of information and associated graphic images. The textual information is stored in a specific format known as Hyper-Text-Mark-up language ("HTML") and is transmitted from web servers to various web clients via Hyper-Text Transport Protocol ("HTTP").

    o. "Uniform Resource Locator," "Universal Resource Locator," or "URL," is the unique address for a file that is accessible on the Internet. For example, a common way to get to a website is to enter the URL of the website's home page file in the Web browser's address line. Additionally, any files within that website can be specified with a

URL. The URL contains the name of the protocol to be used to access the file resource, a domain name that identifies a specific computer on the Internet, and a pathname, a hierarchical description that specifies the location of a file in that computer.

      p.     The terms "records," "documents," and "materials," as used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade form (included, but not limited to, writings, drawings, or painting), photographic form (including but not limited to, microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies), mechanical form (including, but not limited to, phonograph records, printing, or typing) or electrical, electronic or magnetic storage devices such as flash drives, hard drives, CD-ROMs, digital versatile disks (DVDs), Personal Digital Assistants (PDAs), Multi Media Cards (MMCs), memory sticks, optical disks, printer buffers, smart cards, memory calculators, electronic dialers, or electronic notebooks, as well as digital data files and printouts or readouts from any magnetic, electrical or electronic storage device).

## COMPUTERS AND CHILD PORNOGRAPHY

      6.     Based upon my training and experience, I know that computers and computer technology have revolutionized the way in which individuals interested in child pornography interact with each other. In the past, child pornography was produced using cameras and film (either still photography or movies). The photographs required darkroom facilities and a significant amount of skill in order to develop and reproduce the images. There were definable costs involved with the production of pornographic images, and to distribute these images on any scale required significant resources and significant risks. The photographs themselves were somewhat bulky and required secure storage to prevent their exposure to the public and/or law

enforcement. The distribution of these wares was accomplished through a combination of personal contacts, mailings and telephone calls.

7.    The development of computers has radically changed the way that child pornographers obtain, distribute and store their contraband. Computers basically serve five functions in connection with child pornography: access, production, communication, distribution, and storage.

8.    Child pornographers can now convert paper photographs taken with a traditional camera (using ordinary film) into a computer readable format with a device known as a scanner. Moreover, with the advent, proliferation, and widespread use of digital cameras, the images can now be transferred directly from a digital camera onto a computer using a connection known as a USB cable or other device. Digital cameras have the capacity to store images and videos indefinitely, and memory storage cards used in these cameras are capable of holding hundreds of images and videos. A device known as a modem allows any computer to connect to another computer through the use of telephone, cable, or wireless connection. Electronic contact can be made to literally millions of computers around the world.

9.    The computer's ability to store images in digital form makes the computer, itself, an ideal repository for child pornography. The size of the electronic storage media, that is, the hard disk drive used in home computers has grown tremendously within the last several years. These hard disk drives can store hundreds of thousands of images at very high resolution.

10.    The World Wide Web of the Internet affords collectors of child pornography several different venues for obtaining, viewing and trading child pornography in a relatively secure and anonymous fashion.

11

11.    Collectors and distributors of child pornography frequently use online resources to retrieve and store child pornography, including services offered by Internet Portals such as Yahoo!, Hotmail, and Google, among others.  The online services allow a user to set up an account with a remote computing service that provides email services, as well as electronic storage of computer files in any variety of formats.  A user can set up an online storage account from any computer with access to the Internet.  Evidence of such online storage of child pornography is often found on the user's computer.  Even in cases where online storage is used, however, evidence of child pornography can be found on the user's computer in most cases.

12.    As is the case with most digital technology, communications by way of computer can be saved or stored on the computer used for these purposes.  Storing this information can be intentional, i.e., by saving an email as a file on the computer, or saving particular website locations in, for example, "bookmarked" files.  Digital information, images, and videos can also be retained unintentionally, e.g., traces of the path of an electronic communication may be automatically stored in many places (e.g., temporary files or ISP client software, among others).  Often, a computer will automatically save transcripts or logs of electronic communications between its user, and other users, which have occurred over the Internet.  These logs are commonly referred to as "chat logs."  Some programs allow computer users to trade images while simultaneously engaging in electronic communications with each other.  This is often referred to as "chatting," or "instant messaging."  Based on my training and experience, I know that these electronic "chat logs" often have great evidentiary value in child pornography investigations, as they record communications in transcript form, show the date and time of such communications, and also may show the dates and times when images of child pornography were traded over the Internet.  In addition to electronic communications, a computer user's

12

Internet activities generally leave traces or "footprints" in the web cache and history files of the browser used. A forensic examiner often can recover evidence suggesting whether a computer contains peer-to-peer software, when the computer was sharing files, and some of the files which were uploaded or downloaded. Such information is often maintained on a computer for long periods of time until overwritten by other data.

13.    A growing phenomenon on the Internet is peer to peer file sharing (P2P). P2P file sharing is a method of communication available to Internet users through the use of special software. Computers linked together through the Internet using this software form a network that allows for the sharing of digital files between users on the network. A user first obtains the P2P software, which can be downloaded from the Internet. In general, P2P software allows the user to set up file(s) on a computer to be shared with others running compatible P2P software. A user obtains files by opening the P2P software on the user's computer, and conducting a search for files that are currently being shared on the network. Limewire, one type of P2P software, sets up its searches by keyword. The results of the keyword search are displayed to the user. The user then selects file(s) from the results for download. The download of a file is achieved through a direct connection between the computer requesting the file and the computer containing the file.

14.    For example, a person interested in obtaining child pornography images would open the P2P application on his/her computer and conduct a search for files using a term such as "preteen sex." The search is sent out over the network of computers using compatible P2P software. The results of the search are returned to the user's computer and displayed. The user selects from the results displayed the file(s) he/she wants to download. The file is downloaded

13

directly from the computer hosting the file.  The downloaded file is stored in the area previously

designated by the user.  The downloaded file will remain there until moved or deleted.

     15.    A P2P file transfer is assisted by reference to an Internet Protocol (IP) address.

This address, expressed as four numbers separated by decimal points, is unique to a particular

computer during an online session.  The IP address provides a unique location making it possible

for data to be transferred between computers.

     16.    Third party software is available to identify the IP address of the P2P computer

sending the file and to identify if parts of the file came from one or more IP addresses.  Such

software monitors and logs Internet and local network traffic.

     17.    BitTorrent is one of many P2P networks. For a user to become part of the

BitTorrent network, the user must first obtain BitTorrent software and install it on a device.

When the BitTorrent software is running and the device is connected to the Internet, the user will

be able to download files from other users on the network and share files from their device with

other BitTorrent users.  Users of the BitTorrent network wishing to share new content will use a

BitTorrent program to create a 'torrent' file or the file or group of files they wish to share. A

torrent file is a small file that contains information about the file(s) referenced in the torrent form

other BitTorrent users. Torrent files are typically found as the result of keyword searches on

Internet sites that host or link to them. Torrent files may be referenced by their "infohash," which

uniquely identifies the torrent based on the file(s) associated with the torrent file. To download

file(s) from other users on the BitTorrent network, a user typically obtains a torrent file. The

BitTorrent software processes the information in the torrent file and locates devices on the

BitTorrent network sharing all or parts of the actual file(s) being sought. The download of the

content referenced in the torrent is achieved after the requesting computer and the sharing computer(s) directly connect to each other through the Internet using the BitTorrent software.

## CHILD PORNOGRAPHY COLLECTOR CHARACTERISTICS

18.    Based on my experience, training, and conversations with other experienced agents in the area of investigating cases involving sexual exploitation of children, I know that certain common characteristics are often present in individuals who collect child pornography. I have observed and/or learned about the reliability of these commonalities and conclusions involving individuals, who collect, produce and trade images of child pornography. Based upon my training and experience, and conversations with other experienced agents in the area of investigating cases involving sexual exploitation of children, I know that the following traits and characteristics are often present in individuals who collect child pornography:

a.    Many individuals who traffic in and trade images of child pornography also collect child pornography. Many individuals who collect child pornography have a sexual attraction to children. They receive sexual gratification and satisfaction from sexual fantasies fueled by sexually explicit depictions of children.

b.    Many individuals who collect child pornography collect sexually- explicit materials, which may consist of photographs, magazines, motion pictures, video tapes, books, slides, computer graphics or digital or other images for their own sexual gratification. Most of these individuals also collect child erotica, which may consist of images or text that do not rise to the level of child pornography but which nonetheless fuel their deviant sexual fantasies involving children.

c.    Many individuals who collect child pornography often seek out like minded individuals, either in person or on the Internet, to share information and trade

depictions of child pornography and child erotica as a means of gaining status, trust, acceptance, and support. This contact also helps these individuals to rationalize and validate their deviant sexual interest and associated behavior. The different Internet based vehicles used by such individuals to communicate with each other include, but are not limited to, Peer-to-Peer (P2P), email, email groups, bulletin boards, Internet Relay Chat Rooms (IRC), newsgroups, instant messaging, and other similar vehicles.

d.     Many individuals who collect child pornography maintain books, magazines, newspapers and other writings (which may be written by the collector), in hard copy or digital medium, on the subject of sexual activities with children as a way of understanding their own feelings toward children, justifying those feelings and finding comfort for their illicit behavior and desires. Such individuals often do not destroy these materials because of the psychological support that they provide.

e.     Many individuals who collect child pornography often collect, read, copy or maintain names, addresses (including email addresses), phone numbers, or lists of persons who have advertised or otherwise made known in publications and on the Internet that they have similar sexual interests. These contacts are maintained as a means of personal referral, exchange or commercial profit. These names may be maintained in the original medium from which they were derived, in telephone books or notebooks, on computer storage devices, or merely on scraps of paper.

f.     Many individuals who collect child pornography rarely, if ever, dispose of their sexually explicit materials and may go to great lengths to conceal and protect them from discovery, theft, or damage. These individuals view their sexually explicit materials as prized and valuable materials, even as commodities to be traded with other

16

like-minded individuals over the Internet. As such, they tend to maintain or "hoard" their visual depictions of child pornography for long periods of time in the privacy and security of their homes or other secure locations. Based on my training and experience, as well as my conversations with other experienced law enforcement officers, I know that individuals who possess, receive, and/or distribute child pornography by computer using the Internet often maintain and/or possess the items listed in Attachment B.

19.    As stated in substance above and based upon my training and experience, as well as my conversations with other experienced law enforcement officers, I know that individuals who collect and trade child pornography often do not willfully dispose their child pornography collections.

## BACKGROUND OF INVESTIGATION AND FACTS ESTABLISHING PROBABLE CAUSE

20.    On October 21, 2017, agents from the FBI Lafayette Residency Agency conducted an online investigation on the BitTorrent network for offenders sharing child pornography. During this investigation, agents identified IP address 68.225.106.110 as a source of a torrent file with the infohash "ed6d09d43b421b81fbb549b336b8b6f5ec971678." This torrent file referenced 306 files and at least one had been previously identified as child pornography by the National Center for Missing and Exploited Children ("NCMEC").

21.    Using a computer running investigative BitTorrent software, agents made a direct connection with the device using IP address 68.225.106.110, hereinafter referred to as "Suspect Device." The Suspect Device reported it was using BitTorrent client software –FL1490-libtorrent/1.0.7.0.

22.    Upon making a direct connection with the Suspect Device, agents successfully downloaded 134 suspected child pornography files from the Suspect Device. It should be noted

17

that the Suspect Device was the sole contributor of each of the 134 files. Agents reviewed the files and identified a number of images and videos of child pornography. For example, three of the files included in the download were titled and described as follows:

a. "Pictures from ranchi torpedo dloaded in 2009-pedo kdv kidzilla pthc toddlers 0yo 1yo 2yo 3yo 4yo 5yo 6yo 9yo tara babyj (233).jpg" is an image depicting a naked minor prepubescent female laying on her back in a bed with her legs spread exposing her vaginal and anal areas.

b. "(pthc lolifuck) 6 yr boy, 9 yr girl, 33 yr dad 01(2)(2).jpg" is an image depicting a naked minor prepubescent female laying on her back in a bed with a naked prepubescent male on top of her vaginally penetrating her. A naked adult male is bent over on the bed watching the genital region of both minors.

c. "(pthc) slave play_w-sound 4 yo cries,squirms.avi" is a video depicting a minor prepubescent female laying on her back in white underwear and a mask on her face. An adult male starts to kiss her on the mouth as the minor cries and struggles to pull her head away. The adult male then moves the minor's underwear aside and starts to perform oral sex on the minor as she continues to cry. The adult male then exposes the minor's buttocks and rubs his penis on the minor's vagina. Next, the adult male forces the minor to preform fellatio on him while the minor continues to cry.

23. After downloading the child pornography files from the Suspect Device, agents conducted a query on IP address 68.225.106.110, which is the IP addressed utilized by the Suspect Device at the time the child pornography files were downloaded from the Suspect Device, through the American Registry for Internet Numbers ("ARIN"). According to ARIN, IP address 68.225.106.110 is registered to Cox Communications Inc.

18

24.     Agents then issued an administrative subpoena to Cox Communications requesting user information for IP address 68.225.106.110 during the relevant time period.

25.     On November 30, 2017, Cox Communications reported that the subscriber for IP address 68.225.106.110, during the relevant time period, was Robin Ann Wilkerson at 43420 Black Bayou Road, Gonzales, Louisiana 70737, telephone number (225) 290-5365.

26.     Thereafter, FBI Lafayette Residency Agency disseminated all the information regarding its investigation to the FBI Baton Rouge Residency Agency on December 6, 2017. Upon review of the file(s)/folder(s) provided by the agents at the Lafayette Residency Agency, agents at the Baton Rouge Residency Agency determined the file(s)/folder(s) downloaded from the Suspect Device using IP address 68.225.106.110 contained approximately 80 pictures and 50 videos of minors being orally, vaginally, and anally raped.

27.     As part of their usual protocol, on December 7, 2017, agents from the FBI Baton Rouge Residency Agency contacted members of the Internet Crimes Against Children Task Force to deconflict any information associated with the address, 43420 Black Bayou Road, or the IP address 68.225.106.110. A Special Agent with the Louisiana Bureau of Investigations Cyber Crimes Unit indicated that he had a case linked to the same address.  In its case, the Louisiana Bureau of Investigations Cyber Crimes Unit had also identified IP address 68.108.227.217 as a source of child pornography.

28.     As part of their investigation, on August 31, 2017, and again on September 25, 2017, agents with the Louisiana Bureau of Investigation Cyber Crime Unit, issued an administrative subpoena to Cox Communications requesting user information for IP address "68.108.227.217" during the relevant time period.

19

29.     On November 8, 2017, Cox Communications reported that the subscriber for IP

address 68.225.106.110 during the relevant time period of the Cyber Crime Unit investigation

was Robin Ann at 43420 Black Bayou Road, Gonzales, Louisiana 70737, telephone numbers

(225) 290-5365 and (225) 450-3223.

30.     According to information obtained from the Ascension Parish Sherriff's Office

through their "calls for service" at the SUBJECT PREMISIS, deputies familiar with the

SUBJECT PREMISIS believe that at least one family member residing on the SUBJECT

PREMISIS lives in the travel trailer located on the property.  Furthermore, your affiant knows

that anyone living in the travel trailer located on the SUBJECT PREMISIS would have access to

IP address 68.225.106.110 through WIFI.

## SPECIFICS OF SEARCH AND SEIZURE OF COMPUTER SYSTEMS

31.     I have spoken with law enforcement personnel, trained in computer evidence

recovery, who have knowledge about the operation of computer systems and the correct

procedures for the seizure and analysis of computer systems.  These individuals have participated

in the execution of numerous search warrants during which they have seized and/or examined

computer systems.  These individuals have also participated in several warrants that involved the

search and/or seizure of, and has been responsible for analyzing, seized electronic data and

records from those systems.

32.     Based on my experience and training, I know that computers and computer

related media are used for communication and storage of data and information.  As such, it is

reasonable to believe that some or all of the records sought to be seized will be in

electronic/digital format.

20

33.    Furthermore, based upon my training, experience, and consultations with law enforcement personnel who specialize in searching computer systems, I have learned that searching and seizing information from computer systems, and other storage media (including PDAs, cell phones, MP3 Players, etc.), often requires agents to seize most or all the computer system or storage media to be searched later by a qualified computer forensic examiner in a laboratory or other controlled environment.  This is true for the reasons set out below.

34.    The volume of data stored on many computer systems and storage devices will typically be so large that it will be highly impractical to search for data during the execution of the physical search of the premises.  The hard drives commonly included in mere desktop computers are capable of storing millions of pages of text; the storage capacity of other electronic devices (e.g. a micro drive, a thumb drive, etc.) can also be significant.  Unlike the search of documentary files, computers store data in "files" that cannot easily be reviewed.  For instance, a single 1 gigabyte of storage media is the electronic equivalent of approximately 500,000 pages of double spaced text.  Most computer and electronic devices have capacities well in excess of a single gigabyte.

35.    The search through the computer (or other electronic media) itself is a time consuming process.  Software and individual files can be password protected.  Files can be placed in hidden directories; files can be mislabeled or be labeled with names that are misleading.  Similarly, files that contain innocent appearing names ("Smith.ltr") can in fact be electronic commands to electronically cause the data to self-destruct.  Also, files can be "deleted," but, unlike documents that are destroyed, the information and data from "deleted" electronic files usually remains on the storage device until it is "over written" by the computer. For example, a computer's hard drive stores information in a series of "sectors," each of which

21

contains a limited number of electronic bytes usually 512. These sectors are generally grouped

to form clusters. There are thousands or millions of such clusters on a hard drive. A file's

clusters might be scattered throughout the drive (for example, part of a memo could be at Cluster

163, while the next part of the memo might be stored at Cluster 2053). For a non-deleted file,

there are "pointers" that guide the computer in piecing the clusters together.   For a file that has

been deleted, the "pointers" have been removed. Therefore, the forensic examination would

include the piecing together of the associated clusters that made up the "deleted" file. Being

aware of these pitfalls, the investigator/analyst must follow a potentially time consuming

procedure to review the contents of the computer storage device so as to insure the integrity of

the data and/or evidence. A single computer and related equipment could take many days to

analyze properly.

36.    Computer storage media are used to save copies of files and communications, and

printers are used to make paper copies of these communications and files.   Applications and

associated data stored on the storage media are the means by which the computer can send, print,

and save such activity.  Finally, password protected data and other security devices are often

used to restrict access to or hide computer software, documentation or data.   All these parts of a

computer are integrated into the entire operation of a computer.  In order to evaluate the evidence

most effectively, the computers and all of the related computer equipment described above

should be available to a computer investigator/analyst.

37.    Therefore, based upon my knowledge, training, and experience, as well as

information related to me by others involved in forensic examination of computers, I am aware

that searches for and seizures of evidence from computers commonly require agents to seize

most or all of a computer system's input/output and peripheral devices (including other storage

media), in order for a qualified computer expert to accurately retrieve the system's data in a laboratory or other controlled environment.  In order to fully retrieve data from a computer system, investigators must seize all the storage devices, as well as the central processing units (CPUs), and applicable keyboards and monitors which are an integral part of the processing unit.

38.    The best practices for analysis of computer systems and storage media rely on rigorous procedures designed to maintain the integrity of the evidence and to recover hidden, mislabeled, deceptively named, erased, compressed, encrypted, or password protected data while reducing the likelihood of inadvertent or intentional loss or modification of data. A controlled environment, such as a law enforcement laboratory, is typically required to conduct such an analysis properly.

39.    Furthermore, because there is probable cause to believe that computers and their storage devices are all instrumentalities of crimes, within the meaning of 18 U.S.C. §§2422(a), 2423 (b) and 2252 (a)(4)(B), they should all be seized as such.

## SEARCH MEHTODOLOGY TO BE EMPLOYED

40.    The search procedure of electronic data contained in computer hardware, computer software, and/or memory storage devices may include the following techniques (the following is a non-exclusive list, as other search procedures may be used):

    a.    on-site triage of computer systems to determine what, if any, peripheral devices or digital storage units have been connected to such computer systems, as well as a preliminary scan of image files contained on such systems and digital storage devices to help identify any other relevant evidence or potential victims;

23

b.    examination of all of the data contained in such computer hardware, computer software, or memory storage devices to view the data and determine whether that data falls within the items to be seized as set forth herein;

c.    searching for and attempting to recover any deleted, hidden, or encrypted data to determine whether that data falls within the list of items to be seized as set forth herein (any data that is encrypted and unreadable will not be returned unless law enforcement personnel have determined that the data is not (1) an instrumentality of the offenses, (2) a fruit of the criminal activity, (3) contraband, (4) otherwise unlawfully possessed, or (5) evidence of the offenses specified above);

d.    surveying various file directories and the individual files they contain;

e.    opening files in order to determine their contents;

f.    scanning storage areas;

g.    performing key word searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are likely to appear in the evidence described in Attachment B; and,

h.    performing any other data analysis technique that may be necessary to locate and retrieve the evidence described in Attachment B.

## REQUEST FOR NO-KNOCK WRRANT AUTHORITY

41.    Your affiant has learned through training and experience that individuals who use electronic devices to engage in criminal activity involving child pornography routinely utilize encryption and/or anti-forensic software on their electronic devices to evade detection by law enforcement.

42.    Your affiant knows that encryption and anti-forensic software,[1] if activated, can prevent law enforcement from obtaining the information stored on the electronic devices, which are subject to seizure.  If, at the time agents enter to execute this search warrant, an encrypted computer is powered off or locked, then the encryption would be activated and it would be difficult or impossible to search that device without the necessary password or pass-phrase.  To avoid the scenario where agents encounter an encrypted computer or computers, agents will attempt to execute this warrant at a time when the subject under investigation is home and computers at the subject location are up and running and being used to send or receive data over the Internet.  Precautions also need to be taken to ensure that the subject under investigation does not activate encryption and/or anti-forensic software when agents arrive at the home to serve the warrant.  Activating that software can be as simple as pressing a button on a computer or powering a computer down, which takes a matter of seconds.  If the subject under investigation or others in the premises is aware of the search prior to the actual entry of the agents who are conducting the search, the encryption and/or anti-forensic software can therefore be easily activated.

43.    Accordingly, in order to minimize the possibility that agents will encounter encrypted computers, your affiant respectfully requests that this warrant include "no knock" authority allowing agents to make a dynamic entry into the **SUBJECT PREMISES** before announcing their presence, in order to prevent the activation of encryption and/or anti-forensic software, at any time of day or evening at which agents can determine that the subject under investigation is home.

---

[1] In this context, the term anti-forensic software refers to refers to utilities capable of performing artifact wiping and/or trail obfuscation. The methods used in artifact wiping are tasked with permanently eliminating particular files or entire file systems. The purpose of trail obfuscation is to confuse, disorient, and divert the forensic examination process.

## CONCLUSION

44.     Based on the foregoing, there is probable cause to believe that federal criminal statutes cited herein have been violated, and that fruits, evidence, and instrumentalities of these offenses are located at the residence listed in Attachment A.

45.     Therefore, I respectfully request a search warrant be issued by this Court authorizing the search and seizure of the items listed in Attachment B.

46.     Your Affiant is aware that the recovery of data by a computer forensic analyst takes significant time. Much the way recovery of narcotics must later be forensically evaluated in a lab, digital evidence will also undergo a similar process.  For this reason, the "return" inventory will contain a list of only the tangible items recovered.  Unless otherwise ordered by the Court, the return will not include evidence later examined by a forensic analyst.

MARISA COWDRY, SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION

Sworn to and subscribed before me
this 22nd  day of January, 2018,
at Baton Rouge, Louisiana.

HONORABLE ERIN WILDER-DOOMES
UNITED STATES MAGISTRATE JUDGE
MIDDLE DISTRICT OF LOUISIANA

AO 93 (Rev. 11/13) Search and Seizure Warrant



# UNITED STATES DISTRICT COURT

for the

Middle District of Louisiana

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>the Property Located at<br>43420 Black Bayou Road<br>Gonzales, Louisiana 70737 | )<br>)<br>)<br>)  Case No.    18-mj- ‖<br>)<br>)<br>) |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____Middle_____ District of _____Louisiana_____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A - Property to be Searched

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B - Property to Seized

**YOU ARE COMMANDED** to execute this warrant on or before    February 2, 2018    *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.        ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Erin Wilder-Doomes_____.
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*    ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:    1/22/18, 5:00 pm                         *Erin Wilder-Doomes*
                                                                                  *Judge's signature*

City and state:        Baton Rouge, Louisiana                    Erin Wilder-Doomes, U.S. Magistrate Judge
                                                                                  *Printed name and title*

## ATTACHMENT A

## DESCRIPTION OF LOCATION TO BE SEARCHED

The residence located at 43420 Black Bayou Road, Gonzales, Louisiana 70737, is described as a one-story single-family dwelling with white sliding and a grey roof. A small travel trailer is on the property next to the carport that has been verified by the Ascension Parish Sheriff's office as part of the property.





## ATTACHMENT B

## DESCRIPTION OF ITEMS TO BE SEIZED AND SEARCHED

The following materials, which constitute evidence of the commission of a criminal offense, contraband, the fruits of a crime, or property designed or intended for use or which is or has been used as the means of committing a criminal office, namely violations of 18 U.S.C. § 2252A.

      1.      Any and all computer(s), computer hardware, computer software, electronic storage media (including without limitation any and all disk drives, CDs, DVDs, flash drives, cellular telephones, personal digital assistants (PDA), digital cameras and/or memory cards, or any other device capable of electronic storage of data and/or images), computer-related documentation, computer passwords and data-security devices, videotapes, video-recording devices, video-recording players, and video display monitors that are or may be used to: visually depict child pornography; display or access information pertaining to a sexual interest in child pornography; display or access information pertaining to sexual activity with children; or distribute, possess, or receive child pornography, or information pertaining to an interest in child pornography.

      2.      Any and all computer software, including programs to run operating systems, applications, such as word processing, graphics, and communications programs, including, but not limited to, P2P software, that may be or are used to: visually depict child pornography, display or access information pertaining to a sexual interest in child pornography; display or access information pertaining to sexual activity with children; or distribute, possess or receive child pornography, or information pertaining to an interest in child pornography.

3.      Any and all notes, documents, records, or correspondence, in any format and medium (including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic messages, and handwritten notes) pertaining to the possession, receipt, or distribution of child pornography as defined in 18 U.S.C. § 2256(8) or to the possession, receipt, or distribution of visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2).

4.      In any format and medium, all originals, computer files, copies, and negatives of child pornography as defined in 18 U.S.C. § 2256(8), or visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2).

5.      Any and all diaries or address books containing names or lists of names and addresses of individuals who have been contacted by use of the computer(s) or by other means for the purpose of distributing or receiving child pornography as defined in 18 U.S.C. § 2256(8) or visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2).

6.      Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic messages, and handwritten notes), identifying persons transmitting, through interstate or foreign commerce by any means (including, but not limited to, the United States Mail or computer) any child pornography as defined in 18 U.S.C. § 2256(8) or any visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

7.      Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic messages, other digital data files and web cache information) concerning the receipt,

transmission, or possession of child pornography as defined in 18 U.S.C. § 2256(8) or visual

depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

      8.     Any and all notes, documents, records, or correspondence, in any format or

medium (including, but not limited to, envelopes, letters, papers, email messages, chat logs and

electronic messages, and other digital data files) concerning communications between

individuals about child pornography or the existence of sites on the Internet that contain child

pornography or that cater to those with an interest in child pornography.

      9.     Any and all notes, documents, records, or correspondence, in any format or

medium (including, but not limited to, envelopes, letters, papers, email messages, chat logs and

electronic messages, and other digital-data files) concerning membership in online groups, clubs,

or services that provide or make accessible child pornography to members.

      10.     Any and all records, documents, invoices and materials, in any format or medium

(including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic

messages, and other digital data files) that concern any accounts with an internet service

provider.

      11.     Any and all records, documents, invoices and materials, in any format or medium

(including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic

messages, and other digital data files) that concern online storage or other remote computer

storage, including, but not limited to, software used to access such online storage or remote

computer storage, user logs or archived data that show a connection to such online storage or

remote computer storage, and user logins and passwords for such online storage or remote

computer storage.

      12.     Any and all cameras, film, videotapes or other photographic equipment.

13.    Any and all address books, mailing lists, supplier lists, mailing address labels, and any and all documents and records, in any format or medium (including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic messages, and other digital data files), pertaining to the preparation, purchase, and acquisition of names or lists of names to be used in connection with the purchase, sale, trade, or transmission, through interstate or foreign commerce by any means (including the United States Mail or computer) any child pornography as defined in 18 U.S.C. § 2256(8) or any visual depiction of minors engaged in sexually explicit conduct,  as defined in 18 U.S.C. § 2256(2).

14.    Any and all diaries, notebooks, notes, and any other records reflecting personal contact and any other activities with minors visually depicted while engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).